**Ronald TIPTON, Appellant (Plaintiff Below),**

v.

**ROERIG, A DIVISION OF PFIZER PHARMACEUTICALS and Pfizer, Inc., Appellees (Defendants Below).**

No. 49A04–9007–CV–333.

Court of Appeals of Indiana, Fourth District.

Dec. 2, 1991.

R. Douglas Hailey, Ramey & Hailey, Indianapolis, for appellant.

Arlene Rochlin, Rocap Witchger & Threlkeld, Indianapolis, for appellees.

MILLER, Judge.

Defendants/appellees Roerig, a division of Pfizer Pharmaceuticals and Pfizer, Inc. (collectively Pfizer) were awarded summary judgment in a products liability action filed by Ronald Tipton. Additionally, after conducting a hearing, the trial court awarded Pfizer attorney's fees based on Ind.Code 34–1–32–1(b), which permits a court to award such fees to the prevailing party if it finds that the other party *continued* to litigate an action after a claim clearly became frivolous, unreasonable or groundless. The court ordered the fees to be paid by Tipton's counsel, R. Douglas Hailey. Hailey appeals the court's conclusion that attorney's fees were warranted under the circumstances.

Additionally, Pfizer claims that the Appellant's Brief and the Record of Proceedings prepared by Hailey do not conform to our appellate rules and demonstrate procedural and substantive bad faith. Pfizer requests this court to award appellate attorney fees.

We affirm the trial court's award of attorney's fees, but decline to award further sanctions.

## DECISION

### I. *Trial Attorney's Fees*

After undergoing dialysis treatment at Wishard Memorial Hospital from April 16 through May 19, 1984, Ronald Tipton discovered he had a bilateral hearing loss. On April 24, 1986, Tipton sued Wishard and his physician, C. Wolfe, alleging negligence during his treatment. The medical records revealed that during Tipton's hospitalization, he received two drugs, Lasix (not manufactured by Pfizer) and Cefobid, a drug manufactured by Pfizer. Thereafter, Tipton amended his complaint to include a products liability claim (negligence and strict liability) against Pfizer, as manufacturer and seller of Cefobid, which Tipton claimed caused his injuries.[1] Since Tipton had also filed an action against Wishard and Dr. Wolfe with the Insurance Department's medical review panel—a required procedure under our Medical Malpractice Act—the complaint against Wishard and Wolfe was abated in the trial court pending action by the medical review panel.

Discovery proceeded in the claim against Pfizer for nearly three years. During that period, Pfizer successfully sought assistance from the court in compelling Tipton to respond to discovery requests to reveal the basis of his claim against Pfizer. On September 5, 1989—in response to the court's order to produce—Tipton furnished Pfizer a copy of an affidavit of Beverly Perkins–Edwards, M.D., Tipton's treating physician, which Tipton had submitted to the medical review panel almost a year earlier (on October 11, 1988). In her affidavit, Dr. Perkins–Edwards asserted her opinion that Tipton's injuries were caused by Lasix. There was no mention of Cefobid in her affidavit, *nor in any of Tipton's contentions presented to the medical review panel.* Pfizer moved for summary judgment on December 8, 1989, requesting costs, attorney's fees and punitive sanctions from the date of Dr. Perkins–Edwards' affidavit (October 7, 1988) until the date of the hearing on the motion for summary judgment (March 9, 1990) for continuing to litigate the claim against Pfizer while contending before the medical review panel that Lasix caused his injuries. Tipton did not oppose summary judgment either by motion or at the hearing. However, on the date of the hearing, Tipton petitioned the court to make findings pursuant to Ind. Trial Rule 52 on the issue of costs and fees. The Court's findings follow:

### FINDINGS OF FACT

1. On April 25, 1986 [Tipton] filed his Amended Complaint For Damages alleging that Cefobid, a drug manufactured by [Pfizer] was the cause of his injuries.

2. On October 7, 1988 [Tipton's] treating physician, Doctor Beverly Perkins–Edwards, submitted an Affidavit to [Tipton's] counsel stating that [Tipton's] injuries as alleged were caused by Lasix, a drug not manufactured by Pfizer.

3. Counsel for [Tipton] failed to advise Pfizer's attorneys of this Affidavit, failed to dismiss Pfizer from this lawsuit upon receipt of the Affidavit, and continued pursuing this litigation against Pfizer.

4. Discovery in this cause, made a part of the record by Motions and Orders thereon, was continued by the [Tipton's] counsel both in the form of discovery against Pfizer, and by failure to supplement discovery owed to Pfizer, unless by Order of the Court.

5. The record shows that [Tipton's] counsel has pursued the Defendant Hospital and Defendant Physician in this cause in a proceeding before the Department of Insurance in accordance with the Medical Malpractice Act, which contends that Lasix was the sole cause of [Tipton's] injuries.

6. [Tipton's] counsel failed to offer to dismiss Pfizer until shortly before the hearing on Pfizer's Motion for Summary Judgment, Costs and Sanctions, held on March 9, 1990.

---

**1.** The Amended Complaint was served on Pfizer on April 30, 1986; however, the Amended Complaint is not included in the Record.

7. Pfizer's attorneys have submitted their itemized statement of the legal fees and costs associated with the continued representation and defense of Pfizer, incurred after October 7, 1988.

## CONCLUSIONS OF LAW

1. There is no genuine issue of material fact as to the merits of [Tipton's] complaint against Pfizer nor did [Tipton] file any Affidavits or Response to the Motion. [Pfizer] is entitled to Summary Judgment entered in its favor and against the [Tipton].

2. Ind.Code Ann. Section 34–1–32–1 states in pertinent part as follows:

"In any civil action, the Court may award attorney's fees as part of the costs to the prevailing party, if it finds that either party continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless."

3. [Tipton's] failure to voluntarily dismiss Pfizer upon receipt of Doctor Perkins–Edwards Affidavit, and continued pursuit of this Complaint against Pfizer, falls within subsection of the code, and entitles Pfizer to the reasonable and necessary costs and fees associated with the continued defense of this lawsuit beyond October 7, 1988.

4. That the costs and fees associated with the continued defense of Pfizer after the Affidavit of Doctor Perkins–Edwards as set forth in the detailed itemized billing statement, submitted by Pfizer's counsel, reflects reasonable and necessary charges.

5. That while counsel for Pfizer made an ingenious argument reading the Federal Rule 11 into our Trial Rule 11 the Court cannot and should not and does not agree with such argument. Therefore no sanctions shall be imposed.

## JUDGMENT

Argument having been heard on the Motion for Summary Judgment, Costs and Sanctions by [Pfizer] and the Court being duly advised, it is now therefore ORDERED, ADJUDGED AND DECREED that the Motion For Summary Judgment be granted. There being no just cause for delay, Judgment is now granted for [Pfizer] and against the Plaintiff, Ronald M. Tipton. The Court further finds that the costs submitted by [Pfizer] in sum of Five Thousand Four Hundred and Ninety One Dollars and Sixty Nine Cents ($5,491.69) are reasonable and it is therefore ORDERED, ADJUDGED AND DECREED that [Tipton's] counsel pay to [Pfizer] the sum of Five Thousand Four Hundred and Ninety One Dollars and Sixty Nine Cents ($5,491.69) as costs in this action.

R. 287–289.

■ When a trial court enters specific findings of fact and conclusions of law pursuant to T.R. 52, we will not set aside the fact-finding of the trial court unless it is clearly erroneous. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Ind. Dept. of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338. The trial court's decision can only be reversed where the evidence is without conflict and points unerringly to a different conclusion. *Id.* However, we review *de novo* the court's conclusion of law that attorney's fees were warranted under IC 34–1–32–1. *Kahn v. Cundiff* (1989), Ind., 543 N.E.2d 627, *affirming and adopting* Ind.App., 533 N.E.2d 164.

■ Hailey, Tipton's counsel, asks this court to reverse the trial court's "finding" that costs and attorney's fees were appropriate under the circumstances. He does not challenge the factual basis upon which the court entered its conclusion, nor does he challenge the amount of the award as unreasonable. First, he contends that each party is generally required to pay its own attorney's fees *in the absence of a statute providing otherwise* unless the court exercises its equitable power to award fees for one of three exceptional circumstances: obdurate behavior, common fund, or private attorney general, citing *DPW v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373; *Cox v. Ubik* (1981), Ind.App., 424

N.E.2d 127; *Capital Building Supplies, Inc. v. Miller* (1989), Ind.App., 536 N.E.2d 297. He then claims "the only exception applicable which might be inferred from the Court's Findings of Fact, is 'obdurate behavior.'" Appellant's Brief, p. 10. We disagree.

The trial court stated in its conclusions of law that its authority for awarding attorney fees *was* pursuant to a *statute*—IC 34–1–32–1(b)(2), which provides:

> "In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:
>
> \* \* \* \* \* \*
>
> (2) Continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless;"

Our supreme court has rejected the argument that the statute is a codification of the "obdurate behavior" exception. *Kahn, supra.* See also *General Collections, Inc. v. Decker* (1989), Ind.App., 545 N.E.2d 18.

Next, Hailey challenges the court's conclusion that failing to dismiss the action against Pfizer after receiving the doctor's affidavit falls within the subsection of the code. Hailey argues his actions were justifiable and that the continuation of the action against Pfizer while discovery was being completed was not so frivolous, unreasonable, or groundless as to warrant an award of fees to Pfizer. He claims 1) that Dr. Edwards' affidavit and the literature on Lasix may lead to conclusions that it may have been "a" cause of Tipton's hearing loss, but the issue of the cause of impairment is for the medical review panel to decide; 2) that he was coerced into pretrial discovery when Pfizer filed a Trial Rule 41(E) motion, which ran up Pfizer's costs of defending the lawsuit; 3) that he offered to dismiss the action against Pfizer, but he was given no opportunity to dismiss; and 4) that there is no indication of bad faith because he offered no opposition to the motion for summary judgment and only opposed the award of sanctions and cost. He claims that if this court affirms the award of costs, it will be endorsing the destruction of alternative theories of recovery.

Pfizer contends that Hailey has not presented a good faith argument and that his conduct is frivolous, unreasonable and a last ditch attempt to avoid paying costs and fees imposed by the trial court. Pfizer claims that Hailey's argument that he was waiting for the medical review panel to determine the cause of Tipton's injuries before dismissing the products liability claim against Pfizer is without citation to authority and a misstatement of the law. Pfizer argues maintaining a products liability action against a manufacturer has nothing to do with the medical malpractice claim, and notes that Hailey admitted as much in the hearing on Pfizer's Summary Judgment Motion. (R. 335–336). Pfizer argues that once Tipton received the affidavit from Dr. Perkins–Edwards—who was hired by Hailey to review Tipton's medical records—it was incumbent upon his counsel to dismiss the products liability action against Pfizer, and the failure to do so falls squarely within the language of the controlling statute and the controlling case, *Kahn, supra.*

In deciding this issue, we look to our supreme court's decision in *Kahn* for guidance. In *Kahn,* Rachel Cundiff was involved in an accident while driving a car owned by her husband Larry. The passengers in the other car were injured. Attorney Stanley Kahn filed a complaint on behalf of the passengers against Rachel, as driver, and against Larry, on a theory of negligent entrustment. Kahn resisted Larry's motion to dismiss for failure to state a claim and his motion for judgment on the pleadings. On the day of trial, immediately preceding jury selection, Kahn admitted he had no facts to support a negligent entrustment theory against Larry. The trial court dismissed Larry from the case whereupon Larry filed a request for attorney's fees pursuant to IC 34–1–32–1. After a hearing, the court granted the request and ordered Kahn to pay Larry $8,246.65 in attorney's fees and $411.11 for jury costs. Kahn appealed. This court determined that there was no factual basis in the claim

against Larry and, thus, the trial court properly could have awarded attorney's fees under the statute. Our supreme court accepted transfer, affirming and adopting the decision of the Court of Appeals.

In *Kahn*, both courts observed that in interpreting and applying IC 34–1–32–1, we must balance an attorney's duty to zealously represent his clients against the legislature's public policy discouraging frivolous, unreasonable, groundless and bad faith litigation. As our supreme court noted:

> "Commencing an action against a particular party will less often be frivolous, unreasonable, or groundless than continuing to litigate the same action. Because of the system of notice pleading and pre-trial discovery, commencement of an action may often be justified on relatively insubstantial grounds. *Thorough representation will sometimes require a lawyer to proceed against some parties solely for the purpose of investigation through pre-trial discovery. In such cases, counsel is expected to determine expeditiously the propriety of continuing such action and to dismiss promptly claims found to be frivolous, unreasonable, or groundless.*"

543 N.E.2d at 629 (emphasis added).

Our supreme court's decision makes it clear that a claim may be reasonable when filed, but become unreasonable when continued after the attorney conducts an investigation and pre-trial discovery. Guidance was provided in determining whether an attorney's conduct is unreasonable or groundless. A claim is *unreasonable* "if, based on the totality of the circumstances, including the law and facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified." Ind.App., 533 N.E.2d at 170–171. "A claim is *groundless* if no facts exist which support the legal claim relied upon and presented by the losing party." *Id.*, at 171 (emphasis added). A claim is *frivolous* 1) if litigated with an improper motive in bad faith or 2) even without improper motive, if litigated without good faith and rational argument in support of the claim.

*Id.* Furthermore, it does not matter whether an action is continued until the day of trial as in *Kahn*. This court has held that a party who is granted summary judgment is a prevailing party within the meaning of the statute. *Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103.

Here, the trial court found that continuing the action against Pfizer after receiving the doctor's affidavit fell within the statute. Hailey argues it was not unreasonable for him to fail to dismiss the action against Pfizer because discovery had *not* been completed and that he did nothing to pursue the claim against Pfizer—it was Pfizer's attorneys who pursued discovery against him which ran up their own costs.

We agree with Hailey that he was entitled to pursue alternative claims through discovery. However, during the nearly three year period after the complaint was filed, he had obtained no facts—or other expert opinion—implicating Pfizer's product as a cause of Tipton's injuries. He did not even claim that he had conducted any investigation (except for discovery requests to Pfizer) to determine whether there was any evidence implicating Cefobid as a cause of Tipton's hearing loss. Therefore, the claim must be considered groundless.

Hailey claims his conduct was not unreasonable because he was awaiting the outcome of the medical review panel and that he did not take any action to obtain discovery from Pfizer until forced to do so by Pfizer's T.R. 41(E) motion. We do not find that argument persuasive because Pfizer's attorneys were required to zealously represent their clients and to request discovery from him. Furthermore, our supreme court's opinion in *Kahn* makes it clear that an attorney should take steps to "determine expeditiously" the merits of continuing an action. Hailey did not argue to the trial court, or to this court, that he sought other expert opinion or documentation implicating Pfizer's drug as a factor in Tipton's injuries. His defense is that he did nothing but *wait*—and that is precisely the problem. The evidence supports the conclusion that it was unreasonable for Hailey to sit back and wait for years for the

findings of the medical review panel before *beginning* an investigation of Cefobid as "the" cause or as "a" factor in Tipton's injuries. We further note that Hailey did not disclose the existence of Dr. Perkins-Edwards' affidavit until compelled to do so by the court, and he also sought the assistance of the trial court in compelling discovery from Pfizer *after* the summary judgment motion had been filed with the trial court. Additionally, he requested continuances of the hearing on the motion, creating further delay in dismissing the suit against Pfizer. At the hearing, Hailey agreed that summary judgment was proper—implicitly admitting that he had no facts to support the claim. Therefore, it is apparent that Hailey did not dismiss Pfizer "expeditiously."

In circumstances such as these, it is difficult to pinpoint when continuation of the litigation became improper; however, we cannot say that the factual determination of the trial court—the date of the doctor's affidavit—is clearly erroneous. We therefore affirm the trial court's award.

## II. *Appellate Attorney's Fees*

 Pfizer requests appellate attorney's fees for Hailey's procedural and substantive bad faith in pursuing this appeal, citing *Watson v. Thibodeau* (1990), Ind. App., 559 N.E.2d 1205. Pfizer cites the following as examples of procedural bad faith in this appeal:

1. The Record of Proceedings has no marginal notes as required by our appellate rules at the time Tipton's appeal was prepared under App.R. 7.2(A)(3)(a).

2. The Complaint against Pfizer was completely omitted from the Record and was not corrected by Tipton's counsel after Pfizer filed a Motion to Dismiss with this court noting the defect.

3. The trial court Clerk's Certificate is dated *after* the Record was file-stamped by the Clerk of the Court of Appeals. (If the Court of Appeals date is incorrect,

the Record would have been filed late in violation of the appellate rules).

4. Appellant's Statement of the Case is incomplete and does not contain a verbatim recitation of the judgment entered by the trial court as required by App.R. 8.3(A)(4).

5. Appellant's Statement of the Facts is also incomplete and largely devoted to argument in violation of App.R. 8.3(A)(5).

6. The argument section of the Appellant's Brief presents arguments which are unsupported by any reference to authority in violation of App.R. 8.3(A)(7).

While Pfizer is correct in its observations, the deficiencies have not prevented this court from reviewing the merits of the argument. *Blake v. First Crown Financial Corp* (1983), Ind.App., 443 N.E.2d 871, (substandard appeal did not prevent court from addressing the merits of the appeal). *See also Warner v. Warner* (1989), Ind. App. 534 N.E.2d 752 (declining to award appellate attorney's fees *merely* because appellant's brief did not comply with appellate rules). An award of damages under App.R. 15(G) is discretionary and *may* be ordered when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Orr v. Turco Mfg. Co. Inc.* (1987), Ind., 512 N.E.2d 151, 152.[2] However, our supreme court cautioned that attorney's fees should be awarded only when the contentions and argument are "utterly devoid of all plausibility" so as not to chill an attorney's pursuit of novel theories or remedies. *Id.* at 153. An appeal of an award of trial fees and costs will not automatically give rise to an award of appellate attorney's fees. *General Collections, supra.*

In this case, there is a legitimate question as to the point at which continuing the litigation against Pfizer became unsupportable. Hailey's arguments were unpersuasive, but we cannot say this appeal lacks merit or is "permeated" with bad faith,

---

**2.** *See also Lesher v. Baltimore Football Club* (1987), Ind., 512 N.E.2d 156 and *Posey v. Lafayette Bank & Trust Co.* (1987), Ind., 512 N.E.2d 155, *aff'g* (1986), Ind.App., 513 N.E.2d 674, *cert. den. Harkrider v. Lafayette Bank & Trust Co.*

(1988), 485 U.S. 988, 108 S.Ct. 1292, 99 L.Ed.2d 502, cases decided by our supreme court regarding the propriety of awarding appellate attorney's fees.

frivolity, harassment, vexatiousness or purpose of delay or is "so utterly devoid of all plausibility" that punitive sanctions are merited. Therefore, we decline to exercise our discretion to award additional attorney fees.

CONOVER and HOFFMAN, JJ., concur.